**UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA**

**CASE NO. 24-cv-21068-ALTMAN**

**JABBAAR MUJAAHID ABDUL** *a/k/a*
**MUJAAHID ABD UL JABBAAR**,

     *Petitioner*,

*v.*

**ROBERT CONNER**, **WARDEN**,
**FRANKLIN CORRECTIONAL
INSTITUTION**,

     *Respondent.*[1]

_____/

**ORDER**

Our Petitioner, Jabbaar Mujaahid Abdul, has filed a petition for writ of habeas corpus under

28 U.S.C. § 2254, challenging the legality of his state-court judgment. *See* Petition [ECF No. 1] at 1–2.

After careful review, we **DENY** the Petition.

**THE FACTS**

On March 24, 2014, the State of Florida charged Abdul by Information with one count of

lewd and lascivious molestation of a child who was less than 12 years old. *See* Information [ECF No.

20-1] at 46–48. Abdul entered into a plea agreement with the State on December 10, 2014. *See* Plea

Agreement [ECF No. 20-1] at 51–55. As part of that agreement, Abdul pled guilty to a reduced charge

of aggravated child abuse in exchange for a five-year probationary sentence that *didn't* require him "to

---

[1] Abdul has since transferred out of Franklin Correctional Institution, so Warden Robert Conner is
no longer the proper Respondent. *See Rumsfeld v. Padilla*, 542 U.S. 426, 434 (2004) ("The federal habeas
statute straightforwardly provides that the proper respondent to a habeas petition is 'the person who
has custody over the petitioner.'" (cleaned up) (quoting 28 U.S.C. § 2242)); *see also* Notice of Change
of Address [ECF No. 17] at 1 (indicating that Abdul was transferred to Moore Haven Correctional
Facility). But naming the wrong Respondent "is a procedural rather than a jurisdictional defect" and
has no bearing on the resolution of the Petition. *Retic v. United States*, 215 F. App'x 962, 965 (11th Cir.
2007) (quoting *West v. Louisiana*, 478 F.2d 1026, 1029 (5th Cir. 1973)).

register as a sexual offender[.]" *Id.* at 51. Abdul agreed to "enter, actively participate in, and successfully complete a Mentally Disordered Sexual Offender Treatment Program" and acknowledged that the plea agreement didn't preclude the State from subjecting him to "involuntary civil commitment proceedings" under Florida law. *Ibid.* The state trial court accepted the plea and imposed a sentence consistent with the agreement. *See* Judgment [ECF No. 20-1] at 63–65. Abdul did not appeal.

Between December 10, 2014, and August 4, 2015, Abdul's probation officer reported that he had violated the terms and conditions of his probation four separate times: (1) on August 4, 2015, Abdul committed a new law violation "by being arrested for the criminal offense of Burglary and Grand Theft"; (2) on August 4, 2015, Abdul had contact "with the victim [and] the victim's family"; (3) on May 22, 2015, Abdul failed to call his probation officer as instructed; and (4) on June 24, 2015, Abdul "fail[ed] to actively participate in and successfully complete a sex offender treatment program," as his plea agreement required him to do. Second Amended Violation of Probation Affidavit [ECF No. 20-1] at 80.[2]

The state trial court held a violation-of-probation ("VOP") hearing on January 15, 2016. *See* VOP Hr'g Tr. [ECF No. 19-2] at 2–181. At the end of that hearing, the judge found that the State had proven all four violations. *See id.* at 174 ("As to all of the violations that are alleged in the affidavit, I find that they are willful and substantial and they are, in fact, supported by the greater weight of the evidence . . . the evidence is sufficient to satisfy the conscience of the Court, that the conditions that I previously stated have been violated."). The state court then revoked Abdul's probation and sentenced him to twenty years in the custody of the Florida Department of Corrections—to be

---

[2] The probation officer also accused Abdul of violating the terms of his probation *one day* after pleading guilty (on December 11, 2014) by "falsely report[ing]" his current address. Violation of Probation Affidavit [ECF No. 20-1] at 57. But this violation was withdrawn on April 17, 2015. *See ibid.*

followed by ten years of mentally-disordered, sex-offender probation. *See* VOP Judgment [ECF No. 20-1] at 93–94.[3]

Abdul appealed his VOP Judgment to the Third DCA. On appeal, Abdul's counsel admitted that he had "no good faith argument [that could] be made that there was any reversible error in the proceedings" and moved to withdraw under *Anders v. California*, 386 U.S. 738 (1967). *See Anders* Brief [ECF No. 20-2] at 11. On January 11, 2017, the Third DCA withheld ruling on the *Anders* motion and gave Abdul an opportunity to file "a statement of any points [Abdul] chooses to submit as grounds in support of the appeal[.]" Order on Motion to Withdraw [ECF No. 20-1] at 98. Abdul then filed his own *pro se* brief, arguing that the trial court had imposed an illegal sentence by considering "impermissible factors in the sentencing phase[.]" *Pro Se* Additional Brief [ECF No. 20-2] at 21. On May 31, 2017, the Third DCA granted counsel's motion to withdraw and summarily affirmed the VOP judgment and sentence in an unwritten opinion. *See Abdul v. State*, 226 So. 3d 836, 836 (Fla. 3d DCA 2017).

On November 11, 2016,[4] Abdul filed a motion for postconviction relief under FLA. R. CRIM. P. 3.850. *See* Postconviction Motion [ECF No. 20-5] at 44–71. In that motion, Abdul asserted the following six claims for relief: (1) that his plea was involuntary because (a) counsel didn't "properly advise [him] of all the pertinent contents of a recantation from the victims [sic] mother," (b) counsel

---

[3] Once his probation was revoked, Abdul launched a barrage of *pro se* filings at both the state trial court and the Third DCA. *See generally* Response to Order to Show Cause ("Response") [ECF No. 18] at 4–12 (listing all of Abdul's post-judgment motions and appeals); *see also* Order Prohibiting Further *Pro Se* Pleadings [ECF No. 20-8] at 85 ("[T]he Defendant has abused [the] judicial process and is therefore [ ] prohibited from filing any further pleadings challenging his convictions and sentence in these cases unless such pleading is signed by a licensed attorney."), *aff'd, Jabbaar v. State*, 331 So. 3d 708 (Fla. 3d DCA 2021). Since most of those filings have nothing to do with the claims Abdul raises in this Petition, we'll discuss only the ones that are relevant here.

[4] "Under the 'prison mailbox rule,' a *pro se* prisoner's court filing is deemed filed on the date it is delivered to prison authorities for mailing." *Williams v. McNeil*, 557 F.3d 1287, 1290 n.2 (11th Cir. 2009). "Absent evidence to the contrary, [courts] assume that a prisoner delivered a filing to prison authorities on the date that he signed it." *Jeffries v. United States*, 748 F.3d 1310, 1314 (11th Cir. 2014).

involuntarily waived his presence at a hearing, and (c) the prosecutor relied on "misleading and ommissary [sic] testimony," *id.* at 46; (2) that counsel was ineffective "for failing to file a notice of expiration of speedy trial," *id.* at 53; (3) that counsel was ineffective "in failing to investigate the whereabouts of the victim and the victims [sic] mother," *id.* at 56; (4) that a "structural defect" occurred in the proceedings because defense counsel had "an actual conflict of interest," *id.* at 60; (5) that counsel was ineffective for failing to advise Abdul "of the affirmative defense of necessity or self-defense" in a separate criminal case, *id.* at 64; and (6) cumulative error, *id.* at 69.

On September 28, 2020, Abdul filed a "Motion to Hear and Rule," pointing out that the state postconviction court had not ruled on his Postconviction Motion and that "the docket [has] missing entries and his motion[ ] appear[s] to not have been filed." Motion to Hear and Rule [ECF No. 20-10] at 81. On November 2, 2021, the state postconviction court determined that the Postconviction Motion had been timely filed (but not properly docketed) and ordered the State to file a Response. *See* Order Determining Postconviction Motion to be Timely Filed [ECF No. 20-11] at 30. The State filed its Postconviction Response, arguing that all six grounds in the Postconviction Motion should be denied without a hearing. *See* State's Postconviction Response [ECF No. 20-11] at 37. On December 15, 2021, the state postconviction court denied the Postconviction Motion in a written order. *See* Order Denying Postconviction Motion [ECF No. 20-12] at 51.

Abdul appealed the denial of his Postconviction Motion to the Third DCA. In that appeal, Abdul advanced four claims: (1) that the state postconviction court erred in ruling that Abdul "was satisfied with his attorney's advice [which] rendered his plea voluntary," Postconviction Initial Brief [ECF No. 20-12] at 74; (2) that the court erred "in determining that the defense could not file a speedy [trial] demand . . . without depositions," *id.* at 76; (3) that the court erred in not finding an "actual conflict" between Abdul and his attorney, *id.* at 77; and (4) that the court erred in denying the cumulative-error claim because it incorrectly found that Abdul "would not have accepted the plea

offer," *id.* at 78. On November 22, 2023, the Third DCA summarily affirmed the denial of the Postconviction Motion in an unwritten opinion. *See Jabbaar v. State*, 2023 WL 8110610, at *1 (Fla. 3d DCA Nov. 22, 2023). Abdul filed a "motion for rehearing" and a "motion for rehearing en banc" on December 7, 2023, *see* Motion for Rehearing En Banc [ECF No. 20-13] at 87–91; Motion for Rehearing [ECF No. 20-13] at 93–100—both of which the Third DCA denied on January 4, 2024, *see* Order Denying Motions for Rehearing [ECF No. 20-12] at 58. The Third DCA's mandate issued on January 30, 2024. *See ibid.*

Abdul timely filed his Petition in the U.S. District Court for the Northern District of Florida on February 14, 2024. *See* Petition at 28.[5] The case was transferred to us on March 19, 2024. *See* Order Accepting Report and Recommendation [ECF No. 4] at 2. This Order follows.

## THE LAW

### I.    The Antiterrorism and Effective Death Penalty Act ("AEDPA")

AEDPA instructs district courts to deny any claim that was "adjudicated on the merits" in a state-court proceeding unless that adjudication "resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States, or resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." *Harrington v. Richter*, 562 U.S. 86, 97–98 (2011) (summarizing 28 U.S.C. § 2254(d)–(e)). To have "adjudicated [the claim] on the merits," the state court need not have issued any kind of formal opinion or even outlined its reasoning. *Id.* at 99 ("When a federal claim has been presented to a state court and the state court has denied relief, it may be presumed that the state court adjudicated the claim on the merits in the absence of any indication or state-law procedural principles to the contrary."). Rather, when a state court doesn't

---

[5] We accept the State's concession that "[t]he petition is timely." Response at 15; *see also Day v. McDonough*, 547 U.S. 198, 210 n.11 (2006) ("[S]hould a State intelligently choose to waive a statute of limitations defense, a district court would not be at liberty to disregard that choice.").

articulate its reasons for the denial, the federal court must "'look through' the unexplained decision to the last related state-court decision that does provide a rationale" and "then presume that the unexplained decision adopted the same reasoning." *Wilson v. Sellers*, 584 U.S. 122, 125 (2018). "Clearly established Federal law" means "the holdings, as opposed to the dicta, of [the United States Supreme Court's] decisions as of the time of the relevant state-court decision." *Williams v. Taylor*, 529 U.S. 362, 412 (2000). To be "contrary to clearly established federal law, the state court must either (1) apply a rule that contradicts the governing law set forth by Supreme Court case law, or (2) reach a different result from the Supreme Court when faced with materially indistinguishable facts." *Ward v. Hall*, 592 F.3d 1144, 1155 (11th Cir. 2010) (cleaned up).

For "a state court's application of [Supreme Court] precedent" to be "'unreasonable, the state court's decision must have been more than incorrect or erroneous. The state court's application must have been objectively unreasonable." *Wiggins v. Smith*, 539 U.S. 510, 520–21 (2003) (cleaned up). "[I]t is not an unreasonable application of clearly established Federal law for a state court to decline to apply a specific legal rule that has not been squarely established by [the Supreme] Court." *Richter*, 562 U.S. at 101. "And an unreasonable application of those holdings must be objectively unreasonable, not merely wrong; even clear error will not suffice. To satisfy this high bar, a habeas petitioner is required to show that the state court's ruling on the claim being presented in federal court was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement." *Woods v. Donald*, 575 U.S. 312, 316 (2015) (cleaned up).

Section 2254(d) similarly prohibits federal judges from reevaluating a state court's factual findings unless those findings were "based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. § 2254(d). To establish that a state court's factual findings were unreasonable, "the petitioner must rebut 'the presumption of correctness

[of a state court's factual findings] by clear and convincing evidence.'" *Ward*, 592 F.3d at 1155–56 (quoting 28 U.S.C. § 2254(e)(1)). "[E]ven if a petitioner successfully carries his burden under § 2254(e)(1)—showing by clear and convincing evidence that a particular state-court factual determination was wrong—he does not necessarily meet his burden under § 2254(d)(2): Even if the state court made a clearly erroneous factual determination, that doesn't necessarily mean the state court's 'decision' was 'based on' an 'unreasonable determination of the facts in light of the evidence presented in the State court proceeding.'" *Pye v. Warden, Ga. Diagnostic Prison*, 50 F.4th 1025, 1035 (11th Cir. 2022) (en banc) (quoting 28 U.S.C. § 2254(d)(2)). Indeed, habeas relief is not warranted "even if some of the state court's individual factual findings were erroneous—so long as the decision, taken as a whole, doesn't constitute an unreasonable determination of the facts and isn't based on any such determination." *Ibid.* (cleaned up).

"AEDPA's standard is intentionally difficult to meet." *Woods*, 575 U.S. at 315 (cleaned up). When reviewing state criminal convictions on collateral review, "federal judges are required to afford state courts due respect by overturning their decisions only when there could be no reasonable dispute that they were wrong. Federal habeas review thus exists as a guard against extreme malfunctions in the state criminal justice systems, not a substitute for ordinary error correction through appeal." *Id.* at 316 (cleaned up).

Even if a petitioner meets AEDPA's "difficult" standard, he must still show that any constitutional error had a "substantial and injurious effect or influence" on the verdict. *Brecht v. Abrahamson*, 507 U.S. 619, 637 (1993). The *Brecht* harmless-error standard requires habeas petitioners to prove that they suffered "actual prejudice." *Mansfield v. Sec'y, Dep't of Corr.*, 679 F.3d 1301, 1307 (11th Cir. 2012). As the Supreme Court recently explained, while the passage of AEDPA "announced certain new conditions to [habeas] relief," it didn't eliminate *Brecht*'s actual-prejudice requirement. *Brown v. Davenport*, 596 U.S. 118, 134 (2022). In other words, a habeas petitioner must satisfy *Brecht*,

even if AEDPA applies. *See id.* at 138 ("[O]ur equitable precedents remain applicable 'whether or not' AEDPA applies." (citing *Fry v. Pliler*, 551 U.S. 112, 121 (2007)). In short, a "federal court must *deny* relief to a state habeas petitioner who fails to satisfy either [*Brecht*] or AEDPA. But to *grant* relief, a court must find that the petition has cleared both tests." *Id.* at 134 (emphasis in original); *see also Mansfield*, 679 F.3d at 1307 ("[A] habeas petition cannot be successful unless it satisfies both [AEDPA] and *Brecht*.").

## II.     AEDPA's Procedural Requirements

"[A] person in custody pursuant to the judgment of a State court" has one year to file a habeas petition in federal court. 28 U.S.C. § 2244(d)(1). That one-year period "runs from the latest of" the following dates:

> (A) the date on which the judgment became final by the conclusion of direct review or the expiration of the time for seeking such review;
>
> (B) the date on which the impediment to filing an application created by State action in violation of the Constitution or laws of the United States is removed, if the applicant was prevented from filing by such State action;
>
> (C) the date on which the constitutional right asserted was initially recognized by the Supreme Court, if the right has been newly recognized by the Supreme Court and made retroactively applicable to cases on collateral review; or
>
> (D) the date on which the factual predicate of the claim or claims presented could have been discovered through the exercise of due diligence.

28 U.S.C. § 2244(d)(1)(A)–(D). But this limitations defense is waivable. *See Day v. McDonough*, 547 U.S. 198, 210 n.11 (2006) ("[S]hould a State intelligently waive a statute of limitations defense, a district court would not be at liberty to disregard that choice.").

Beyond meeting this one-year window, though, federal habeas petitioners must also *exhaust* their claims by "*properly* present[ing] [them] to the state courts." *O'Sullivan v. Boerckel*, 526 U.S. 838, 848 (1999) (emphasis in original). Specifically, federal habeas petitioners must "fairly present every issue

raised in [their] federal petition to the state's highest court, either on direct appeal or on collateral review." *Mason v. Allen*, 605 F.3d 1114, 1119 (11th Cir. 2010) (cleaned up). "If a petitioner fail[ed] to 'properly' present his claim to the state court—by exhausting his claim[ ] and complying with the applicable state procedure—prior to bringing his federal habeas claim, then [§ 2254] typically bars [courts] from reviewing the claim." *Ibid*. In other words, where a petitioner has not "*properly* presented his claims to the state courts," the petitioner will have "procedurally defaulted his claims" in federal court. *O'Sullivan*, 526 U.S. at 848.

There are, to be sure, two exceptions to the general rule that a federal court may not consider a procedurally defaulted claim on the merits: "cause and prejudice" and "actual innocence." *Dretke v. Haley*, 541 U.S. 386, 393 (2004) ("[A] federal court will not entertain a procedurally defaulted constitutional claim in a petition for habeas corpus absent a showing of cause and prejudice to excuse the default. We have recognized a narrow exception to the general rule when the habeas applicant can demonstrate that the alleged constitutional error has resulted in the conviction of one who is actually innocent of the underlying offense."). A habeas petitioner can establish "cause and prejudice" if (1) "some objective factor external to the defense impeded the effort to raise the claim properly in the state court," and (2) "there is at least a reasonable probability that the result of the proceeding would have been different." *Harris v. Comm'r, Ala. Dep't of Corr.*, 874 F.3d 682, 688 (11th Cir. 2017). "Actual innocence," on the other hand, "applies to a severely confined category: cases in which new evidence shows 'it is more likely than not that no reasonable juror would have convicted the petitioner.'" *McQuiggin v. Perkins*, 569 U.S. 383, 395 (2013) (quoting *Schlup v. Delo*, 513 U.S. 298, 329 (1995)). The petitioner bears the burden of establishing that one of these exceptions to the procedural-default rule applies. *See Gordon v. Nagle*, 2 F.3d 385, 388 (11th Cir. 1993) ("A defendant has the burden of establishing cause and prejudice."); *Arthur v. Allen*, 452 F.3d 1234, 1245 (11th Cir. 2006) ("The petitioner must support the actual innocence claim with new reliable evidence[.]" (cleaned up)).

All that said, "[s]tates can waive procedural bar defenses in federal habeas proceedings, including exhaustion." *Vazquez v. Sec'y, Fla. Dep't of Corr.*, 827 F.3d 964, 966 (11th Cir. 2016) (cleaned up)). But "[a] State shall not be deemed to have waived the exhaustion requirement . . . unless the State, through counsel, *expressly* waives the requirement." 28 U.S.C. § 2254(b)(3) (emphasis added); *see also McNair v. Campbell*, 416 F.3d 1291, 1304 (11th Cir. 2005) (same).

### III.   Ineffective Assistance of Counsel

The Sixth Amendment affords a criminal defendant the right to "the Assistance of Counsel for his defen[s]e." U.S. CONST. amend. VI. "The benchmark for judging any claim of ineffectiveness must be whether counsel's conduct so undermined the proper functioning of the adversarial process that the trial cannot be relied on as having produced a just result." *Strickland v. Washington*, 466 U.S. 668, 686 (1984). To prevail on a claim of ineffective assistance of counsel, a habeas litigant must demonstrate "that (1) his counsel's performance was deficient and 'fell below an objective standard of reasonableness,' and (2) the deficient performance prejudiced his defense." *Raleigh v. Sec'y, Fla. Dep't of Corr.*, 827 F.3d 938, 957 (11th Cir. 2016) (quoting *Strickland*, 466 U.S. at 687–88). This same standard applies to alleged errors made by both trial counsel and appellate counsel. *See Farina v. Sec'y, Fla. Dep't of Corr.*, 536 F. App'x 966, 979 (11th Cir. 2013) ("A claim of ineffective assistance of appellate counsel is evaluated under the same standard as for trial counsel.").

To establish the first prong (deficiency), "a petitioner must [show] that *no* competent counsel would have taken the action that his counsel did take[.]" *Chandler v. United States*, 218 F.3d 1305, 1315 (11th Cir. 2000) (en banc) (emphasis added). So, if "some reasonable lawyer at the trial could have acted, in the circumstances, as defense counsel acted at trial[,]" counsel could not have performed deficiently. *Waters v. Thomas*, 46 F.3d 1506, 1512 (11th Cir. 1995) (en banc) (quoting *White v. Singletary*, 972 F.2d 1218, 1220 (11th Cir. 1992)).

As for the second prong (prejudice), "a defendant is prejudiced by his counsel's deficient performance if 'there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different.'" *Porter v. McCollum*, 558 U.S. 30, 40 (2009) (quoting *Strickland*, 466 U.S. at 694). "A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Strickland*, 466 U.S. at 694. To succeed on this prong, a defendant must show that "counsel's errors were so serious as to deprive the defendant of a fair trial, a trial whose result is reliable." *Id.* at 687.

## ANALYSIS

Abdul asserts four grounds for relief in his Petition. *First*, he argues that the State committed a *Brady*[6] violation by failing to inform him (or his lawyer) "of all the contents of a recantation from the victim's mother[.]" Petition at 13. *Second*, Abdul blames his lawyer for "failing to file a notice of expiration of speedy trial time" under FLA. R. CRIM. P. 3.191. *Id.* at 15. *Third*, Abdul claims that his state proceedings were infected with a "structural defect"—which caused the trial court to "lack[ ] jurisdiction to consider the plea agreement"—because neither he nor his public defender were "present for the March 24, 2014 arraignment." *Id.* at 18–19. *Fourth*, Abdul avers that his plea was involuntary because of his "adversarial relationship" with his defense attorney. *Id.* at 22.

The State concedes that Grounds One and Two have been "exhausted." Response at 18, 20; *see also Vazquez*, 827 F.3d at 966 ("States can waive procedural bar defenses in federal habeas proceedings, including exhaustion." (cleaned up)). We'll therefore review both grounds under the deferential standard Congress set out in 28 U.S.C. § 2254(d). *See Freeman v. Comm'r, Ala. Dep't of Corr.*, 46 F.4th 1193, 1222 (11th Cir. 2022) ("Because we conclude that Freeman's claim . . . was exhausted here, we review the claim under AEDPA."). At the same time, the State contends that Grounds Three and Four are unexhausted and should be dismissed. *See* Response at 23 ("[Abdul] did not raise

---

[6] *See Brady v. Maryland*, 373 U.S. 83 (1963).

[Ground Three] in his [Postconviction Motion] . . . . This claim is unexhausted."); *id.* at 24 ("[Ground Four] is unexhausted and procedurally defaulted."). Although the State makes a strong case that Grounds Three and Four are unexhausted, in the interest of judicial economy, we'll "skip over the procedural bar issues" surrounding Grounds Three and Four and "analyze the claim[s] *de novo*," since both "fail on the merits in any event." *Dallas v. Warden*, 964 F.3d 1285, 1307 (11th Cir. 2020). So, to recap, while the state court's decisions on Grounds One and Two are entitled to significant deference under § 2254(d), we'll review Grounds Three and Four *de novo*.

## I. Ground One

In Ground One, Abdul claims that the State committed a *Brady* violation by withholding a portion "of a recantation from the victim's mother" *and* that defense counsel was ineffective for failing to "consult and properly advise" Abdul about this recantation. Petition at 13. In the letter, which Abdul attached to his Postconviction Motion, the victim's mother wrote that she was "75% sure" her daughter (the victim) had lied and "changed her story several times," and she expressed her hope that the State would "drop the charges at this time because an innocent man is serving time for a child that [was] seeking wrong attention." Recantation Letter [ECF No. 20-5] at 74–75. The letter was addressed to Herbert Smith, Abdul's public defender, and was faxed to him on September 16, 2014—several months *before* Abdul pled guilty. *See id.* at 73. The State counters that it committed no *Brady* violation because it "reported that the victim and her mother left Florida" and because defense counsel knew that "the mother wanted to drop the charges." Response at 19. We agree that there's no evidence of a *Brady* violation and that defense counsel properly advised Abdul about the mother's letter.

Under AEDPA, we must review "the highest state court decision reaching the merits of a habeas petitioner's claim[.]" *Newland v. Hall*, 527 F.3d 1162, 1199 (11th Cir. 2008). In our case, that's the Third DCA's decision on the merits of Ground One—which was issued *without* a written opinion. *See Jabbaar*, 2023 WL 8110610, at *1. When faced with an "unexplained decision" like this, we "look

through" to the "last related state-court decision that does provide a relevant rationale" and presume that the Third DCA "adopted the same reasoning." *Wilson*, 584 U.S. at 125. Here, the state postconviction court disposed of Ground One in a reasoned opinion, in which it concluded that: (1) "the letter characterized by [Abdul] as a 'recantation letter' is not actually a recantation"; and (2) "[Abdul's] claim that he did not know about the letter at the time of taking the plea" was refuted by the record. Order Denying Postconviction Motion [ECF No. 20-12] at 52.

To establish a *Brady* violation, Abdul must show that: "(1) the evidence at issue [is] favorable to the accused, which means it is either exculpatory or impeaching, (2) the evidence [was] willfully or inadvertently suppressed by the prosecution, and (3) the accused [was] prejudiced as a result." *Rodriguez v. Sec'y, Fla. Dep't of Corr.*, 756 F.3d 1277, 1303 (11th Cir. 2014) (citing *Strickler v. Greene*, 527 U.S. 263, 281–82 (1999)). In our case, the state courts reasonably applied *Brady* in denying Ground One because the victim's mother sent the Recantation Letter directly to defense counsel, so (it goes without saying) the State couldn't have "suppressed" it. *See* Recantation Letter [ECF No. 20-5] at 73; *see also United States v. Meros*, 866 F.2d 1304, 1309 (11th Cir. 1989) ("The government is not obliged under *Brady* to furnish a defendant with information which he already has or, with any reasonable diligence, he can obtain himself." (quoting *United States v. Valera*, 845 F.2d 923, 928 (11th Cir. 1988))).[7]

Moreover, the record is clear that *both* the State *and* defense counsel knew about the mother's desire to have the charges against Abdul dropped—as well as her belief that the victim might have lied. During a September 17, 2014, hearing (just one day after the victim's mother sent the Recantation Letter to Abdul's lawyer), *defense counsel* recalled that the victim's mother had contacted him to ask

---

[7] Abdul alleges that the State should have separately notified an attorney named "Jean-Michel D'Escoubet" about the existence of the Recantation Letter. *See* Petition at 13. But Abdul wasn't represented by Mr. D'Escoubet when he pled guilty, and Abdul doesn't explain how he was prejudiced by the State's failure to disclose the Recantation Letter to an attorney who wasn't representing him at the relevant time. *Cf.* Change of Plea Hr'g Tr. [ECF No. 19-1] at 21 (indicating that "Herbert Smith, APD," appeared on behalf of Abdul); *see also* State Court Docket [ECF No. 20-1] at 37 (showing that Mr. D'Escoubet wasn't appointed to represent Abdul until January 24, 2020).

"how do I drop the charges," to claim that "there's new evidence," and to admit that she "can't say what my daughter said is the truth[.]" 9/17/14 Hr'g Tr. [ECF No. 19-1] at 12. In response, the prosecutor said that, while she had received the same letter, she remembered that the victim's mother had "indicated to me [on a prior occasion] that she wanted to relocate because she wants [the victim] to continue with her life[.]" *Id.* at 14. In short, since "[i]t is abundantly clear . . . that defense counsel was aware [of the Recantation Letter], and [Abdul] offers no convincing evidence that the State refused to allow him access to this [letter] or that they intentionally suppressed the evidence," *Routly v. Singletary*, 33 F.3d 1279, 1285 (11th Cir. 1994), we **DENY** Abdul's *Brady* claim as frivolous.

Abdul's argument that defense counsel performed ineffectively by failing "to consult and properly advise [Abdul] of all the contents" of the Recantation Letter is similarly meritless. Petition at 13. The state court found, and we agree, that Abdul knew about the letter before he pled guilty—even though he wasn't present at the September 17, 2014, hearing at which the letter was discussed. *See* 9/17/14 Hr'g Tr. [ECF No. 19-1] at 10 ("The Court: Do we need Mr. Abdul here? [Defense Counsel:] No, not for this. I explained to him and he waived his appearance for that."); *see also* Postconviction Motion [ECF No. 20-5] at 48 (admitting that defense counsel "called the Defendant at the jail to advise him that [the victim's mother] was actively planning to move out of the state to Tennessee and no longer wanted to prosecute").

In any event, Abdul also fails to allege that "he would not have pleaded guilty and would have insisted on going to trial" if defense counsel had spent *more* time discussing the Recantation Letter with him. *Hill v. Lockhart*, 474 U.S. 52, 59 (1985); *see also Degraw v. Inch*, 2021 WL 9722098, at *8 (S.D. Fla. Apr. 14, 2021) (Marra, J.) ("Because Petitioner pled guilty, showing prejudice under *Strickland* requires more than conclusory allegations that trial counsel should have done something more or something differently."). That's just another reason to **DENY** Ground One.

The state court reasonably concluded that the State didn't commit a *Brady* violation and that defense counsel told Abdul about the Recantation Letter *before* he pled guilty. We therefore **DENY** Ground One.

## II.     Ground Two

In Ground Two, Abdul castigates his lawyer "for failing to file a notice of expiration of speedy trial pursuant to FLA. R. CRIM. P. 3.191(b)(4)." Petition at 15. Abdul says that he directed defense counsel "to file a demand for speedy trial after the [bond] hearing concluded on June 4, 2014," but (he claims) counsel refused to do so. *Ibid.*[8] Abdul adds that, when he filed a *pro se* demand for speedy trial, the trial court mistakenly "sua sponte [struck] the motion." *Id.* at 16. Although Abdul's Petition *doesn't* explain why counsel should've filed a speedy-trial demand, *see id.* at 15–16—an omission that's fatal to his claim[9]—he *did* suggest in his Postconviction Motion that counsel should have tried to force the State to trial *without* the victim's mother's cooperation, *see* Postconviction Motion [ECF No. 20-5] at 53 ("[Defense counsel] knew that [the victim's mother] had no intentions of participating further and the probability of her being available for depositions was zero.").

The State counters that defense counsel's failure to file a speedy-trial demand was reasonable because "he could not file it in good faith" and because, in any event, Abdul is simply speculating

---

[8] Abdul again mistakenly repeats his claim that Mr. D'Escoubet, and not Mr. Smith of the public defender's office, represented him during these proceedings. *See ante*, at 13 n.7. Abdul, however, *admitted* in his state-postconviction pleadings that, at all relevant times before his plea, he was represented by Mr. Smith. *See* Postconviction Motion [ECF No. 20-5] at 53 ("On September 17, 2014 [sic] Herbert Smith called the Defendant on the jail phone for an attorney client call.").

[9] *See United States v. Campbell*, 26 F.4th 860, 873 (11th Cir. 2022) ("[F]ailure to raise an issue in an initial brief . . . should be treated as a forfeiture of the issue[.]"); *Sappupo v. Allstate Floridian Ins. Co.*, 739 F.3d 678, 681 (11th Cir. 2014) ("We have long held that an appellant abandons a claim when he either makes only passing references to it or raises it in a perfunctory manner without supporting arguments and authority."); *Hamilton v. Southland Christian Sch., Inc.*, 680 F.3d 1316, 1319 (11th Cir. 2012) ("[T]he failure to make arguments and cite authorities in support of an issue waives it."); *In re Egidi*, 571 F.3d 1156, 1163 (11th Cir. 2009) ("Arguments not properly presented in a party's initial brief or raised for the first time in the reply brief are deemed waived.").

about the extent to which the State would have had trouble securing the victim's mother's attendance at trial. *See* Response at 22. Again, we agree with the State.

Under Florida law, a criminal defendant can file a "demand for speedy trial" within "60 days of being charged." *Dillard v. Sec'y, DOC*, 440 F. App'x 817, 820 (11th Cir. 2011) (citing FLA. R. CRIM. P. 3.191(b)). "If [the defendant] is not brought to trial within 50 days of filing the demand through no fault of his own, and he files a notice that his speedy trial time has expired, the defendant may be forever discharged from the crime." *Williams v. Sec'y, Fla. Dep't of Corr.*, 2016 WL 10749631, at *3 (11th Cir. July 27, 2016) (citing FLA. R. CRIM. P. 3.191(b)(4), (p)). Florida law is clear that defense counsel—not the criminal defendant—is invested with the discretion to invoke (or waive) his client's speedy-trial rights, with or without the client's consent. *See Dillard*, 440 F. App'x at 820 ("[A] waiver of speedy trial by counsel is binding on the defendant, 'even though done without consulting him and even against the client's wishes.'" (quoting *State v. Kruger*, 615 So. 2d 757, 759 (Fla. 4th DCA 1993))); *see also Ether v. Dixon*, 2022 WL 1908918, at *10 (S.D. Fla. June 3, 2022) (Altman, J.) ("Florida law is clear that a lawyer can waive his client's speedy-trial rights without his client's consent."). And a lawyer cannot file a demand for a speedy trial unless "the accused is available for trial, [counsel] has diligently investigated the case, and [counsel] is prepared or will be prepared for trial within 5 days." FLA. R. CRIM. P. 3.191(g); *see also Sundberg v. Sec'y, Dep't of Corr.*, 2010 WL 3943751, at *9 (M.D. Fla. Oct. 7, 2010) (Hodges, J.) ("Therefore, under Florida law, counsel could not have made a demand for speedy trial until he had investigated all matters necessary to complete the discovery process.").

In denying Ground Two, the state postconviction court found that defense counsel had "waived the speedy trial time periods provided for in Rule 3.191" and that, in any event, counsel "could not file a Speedy Demand under Rule 3.191 because he could not announce ready [sic] in good faith without [the victim's mother's] depositions." Order Denying Postconviction Motion [ECF No. 20-12] at 53. To the extent Abdul is challenging the state postconviction court's application of Rule

3.191, we summarily reject that portion of Ground Two because "claims based on Rule 3.191 are not cognizable on federal habeas review [since they] involve only state procedural rules and not errors of federal constitutional dimension." *Williams v. Sec'y, Fla. Dep't of Corr.*, 2018 WL 11300374, at *5 (11th Cir. Nov. 19, 2018) (citing *Davis v. Wainwright*, 547 F.2d 261, 264 (5th Cir. 1977)).

And, as to the portion of Ground Two in which Abdul advances an ineffective-assistance claim, we find that the state postconviction court reasonably determined that counsel's failure to file a speedy-trial demand wasn't deficient because counsel *couldn't* have filed the demand in good faith. In state court, defense counsel explained that he and the State were jointly agreeing to a continuance because he (counsel) wanted to "find out whether or not I can depose [the victim and her mother] before they leave town." 9/17/14 Hr'g Tr. [ECF No. 19-1] at 13. Counsel cannot be ineffective for waiving his client's speedy-trial rights where "counsel was actively pursuing a defense and preparing for trial by deposing witnesses and conducting an investigation." *Ether*, 2022 WL 1908918, at *10 (cleaned up) (quoting *Wells v. McNeil*, 2009 WL 2767659, at *12 (S.D. Fla. Aug. 25, 2009) (Moreno, J.)); *see also Berry v. Sec'y, Dep't of Corr.*, 2015 WL 6704186, at *9 (M.D. Fla. Nov. 2, 2015) (Steele, J.) (affirming the denial of an ineffective-assistance claim where "defense counsel could not have filed a speedy trial demand in good faith").

Abdul's two counterarguments are unpersuasive. *First*, Abdul is simply wrong to suggest that his attorney and the trial court were required to respect his "*pro se* demand for speedy trial." Petition at 16. For one thing, "a *pro se* pleading is a nullity and must be stricken if it is filed while the defendant is represented by counsel." *Cornelius v. State*, 223 So. 3d 398, 401 (Fla. 5th DCA 2017). For another, counsel was authorized to "waive [Abdul's] right to a speedy trial," even if Abdul disagreed with that decision. *Fayson v. Sec'y, Fla. Dep't of Corr.*, 568 F. App'x 771, 773 (11th Cir. 2014).

*Second*, defense counsel reasonably concluded that Abdul's strategy of using the speedy-trial demand to force the State to trial was unwise. Abdul believes that a speedy-trial demand would've

doomed the State's case because the victim's mother "had no intentions of participating further and the probability of her being available for depositions was zero." Postconviction Motion [ECF No. 20-5] at 53. But the record shows that the victim's mother was in regular contact with both the prosecutor and defense counsel. *See* 9/17/14 Hr'g Tr. [ECF No. 19-1] at 14 ("[The Prosecutor:] I did meet with [the victim's mother] personally in my office. . . . As of yesterday, I received the same fax that [defense] counsel indicated, and I haven't had the chance to speak with [the victim's mother] to see what this charge of heart is. As far as I know, she is still living here in Miami. She is still within my subpoena power."). We cannot grant Abdul relief on the basis of speculation that the victim's mother, who had made herself available to the lawyers, would've suddenly fled *without* sitting for her deposition. *See Aldrich v. Wainwright*, 777 F.2d 630, 636 (11th Cir. 1985) ("Speculation is insufficient to carry the burden of a habeas corpus petitioner[.]"). In her Recantation Letter, in fact, the victim's mother indicated that she *wanted* to stay in touch with the State—if only so that she could get the charges against Abdul dropped. *See* Recantation Letter [ECF No. 20-5] at 74–75. And, lest we forget, *defense counsel* was similarly eager to depose the victim's mother because she had it within her power to discredit the victim's inculpatory account. *See* 9/17/14 Hr'g Tr. [ECF No. 19-1] at 13 ("[Defense Counsel:] And then [the victim's mother] wrote me—she wrote us [these] two or three pages saying why she wants to have nothing more to do with this case. So that's why I put the case on the calendar to let the Court know about what the status of this is and find out whether or not I can depose these people before they leave town."). It was thus perfectly reasonable for defense counsel to seek a continuance to depose the victim's mother.

When considering this crucial context, Abdul cannot show that "no reasonable counsel would have taken the action that his counsel did take." *Chandler*, 218 F.3d at 1315. We therefore **DENY** Ground Two.

### III.      Ground Three[10]

In Ground Three, Abdul claims that a "structural defect" tainted the state-court proceedings because neither he nor his attorney were present at his arraignment. *See* Petition at 18 ("Public Defender Connie Alter was not present for the March 24, 2014 arraignment."). Abdul contends that, without his (or his lawyer's) presence at the arraignment, (1) "the trial court lacked jurisdiction to consider the plea agreement," and (2) he could not have knowingly and voluntarily pled guilty. *Id.* at 19. The State calls this claim "meritless" and points out that Abdul was, during the entire pendency of his criminal case, represented by counsel. *See* Response at 23–24. Again, we agree with the State.

The state trial-court docket reveals that, at Abdul's initial appearance on March 4, 2014, the public defender's office was appointed to represent him, and he received a "Notice of Defendant's Right to Counsel." State Court Docket [ECF No. 20-1] at 44. Counsel then entered a "written plea of not guilty" later that day. *Ibid.* Although neither Abdul nor his *assigned* assistant public defender were present at the arraignment, their absence didn't violate Abdul's constitutional rights because a *different* assistant public defender *was* present at the arraignment and was able to represent the office's client, Abdul, at that straightforward and perfunctory hearing. *See* Arraignment Hr'g Tr. [ECF No. 19-1] at 4 ("[Defense Counsel]: As long as it's a straightforward arraignment, I'm fine standing in."); *see also Nolan v. State*, 794 So. 2d 639, 640 (Fla. 2d DCA 2001) (rejecting claim that "the trial court erred at the first sentencing hearing by allowing a stand-in public defender" where the defendant "[did] not explain how his stand-in public defender provided any deficient representation that prejudiced [the defendant]").

Nor was Abdul's presence even required at the arraignment. Defense counsel filed a written plea of not guilty *before* the arraignment, *see* State Court Docket [ECF No. 20-1] at 44, so the formal

---

[10] Remember that, unlike the deference we afforded the state court's findings on Grounds One and Two, we'll be reviewing Grounds Three and Four *de novo*.

arraignment was superfluous, *see* FLA. R. CRIM. P. 3.160(a) ("If the defendant is represented by counsel, counsel may file a written plea of not guilty at or before arraignment and thereupon arraignment must be waived."); Arraignment Hr'g Tr. [ECF No. 19-1] at 5 ("[Defense Counsel:] [We stand] on the written plea."). Abdul also waived his right to complain about any defect that *might* have occurred at the arraignment when he pled guilty. *See* FLA. R. CRIM. P. 3.160(b) ("Neither a failure to arraign nor an irregularity in the arraignment shall affect the validity of any proceeding in the cause if the defendant pleads to the indictment or information on which the defendant is to be tried[.]"); *see also State v. Calle*, 560 So. 2d 355, 356–57 (Fla. 5th DCA 1990) ("[Rule 3.160(b)] provides that a defendant waives any remedy he may have for the state's failure to arraign him if he enters a plea to the indictment or information or if he proceeds to trial without objection.").

Since Abdul was informed of his right to counsel, was continuously represented by counsel before he pled guilty, and didn't need to be at his arraignment in any event, his absence from the arraignment wasn't the kind of "structural defect" that could have affected the voluntariness of his plea. We therefore **DENY** Ground Three.

## IV.     Ground Four

Finally, in Ground Four, Abdul alleges (1) that the trial court "erred in determining [Abdul] would not have accepted a plea" and (2) that a "structural defect rendered [the] plea involuntary." Petition at 21. This claim is admittedly difficult to understand. But, as best we can tell, Abdul is suggesting that his guilty plea was "uncounseled" because "an adversarial relationship actually existed" between him and his lawyer. *Id.* at 22. As before, the supposed "adversarial relationship" stems from Abdul's request—which he says his lawyer ignored—that counsel file a speedy-trial demand under FLA. R. CRIM. P. 3.191. *See ibid.* (arguing that the state postconviction court should have considered "the transcript of the July 25, 2014 hearing on [Abdul's] demand for speedy trial" and that the trial court "abused its discretion by *sua sponte* striking the demand for speedy trial"). The State contends

that counsel's refusal "to adopt [Abdul's] *pro se* demand for [a speedy trial] does not establish an actual conflict of interest." Response at 25. Once again, the State has it right.

A criminal defendant has the right to an attorney with "unfettered loyalty to [his] clients[.]" *Reynolds v. Chapman*, 253 F.3d 1337, 1342 (11th Cir. 2001). In *Cuyler v. Sullivan*, 446 U.S. 335 (1980), the Supreme Court established "a two-part test [to] evaluate whether an attorney is constitutionally ineffective due to a conflict of interest . . . . [A] petitioner must demonstrate: (a) that his defense attorney had an actual conflict of interest, and (b) that this conflict adversely affected the attorney's performance." *Ibid.* (citing *Cuyler*, 446 U.S. at 348–49). To show that his attorney was operating under an "actual conflict," the petitioner "must make a factual showing of inconsistent interests or point to specific instances in the record to suggest an actual impairment of his or her interests." *Freund v. Butterworth*, 165 F.3d 839, 859 (11th Cir. 1999) (cleaned up). "A possible, speculative or merely hypothetical conflict does not suffice." *Lightbourne v. Dugger*, 829 F.2d 1012, 1023 (11th Cir. 1987). To prove adverse effect, "a defendant needs to demonstrate: (a) that the defense attorney could have pursued a plausible alternative strategy, (b) that this alternative strategy was reasonable, and (c) that the alternative strategy was not followed because it conflicted with the attorney's external loyalties." *Reynolds*, 253 F.3d at 1343.

Abdul fails both prongs of the *Cuyler* test. For starters, Abdul cannot point to a single "instance[ ] in the record to suggest an actual impairment of [defense counsel's] interests." *Freund*, 165 F.3d at 859. He, instead, speculates that defense counsel *must have* had an "actual conflict" because he didn't advance Abdul's "demand for [a] speedy trial." Petition at 22. But, as multiple circuit courts have held, a client's "dissatisfaction" with an attorney's "strategic and tactical decisions . . . is not sufficient to create a conflict of interest." *Howell v. Sec'y, Fla. Dep't of Corr.*, 730 F.3d 1257, 1267 (11th Cir. 2013); *see also, e.g.*, *United States v. White*, 174 F.3d 290, 296 (2d Cir. 1999) ("[W]e decline to adopt any broad rule that would suggest that, simply by expressing dissatisfaction with his attorney's

performance, a defendant can create a 'conflict of interest' that can be said to require the attorney to choose between advancing the attorney's own cause and that of her client."); *United States v. Jones*, 662 F.3d 1018, 1025–26 (8th Cir. 2011) ("[The Sixth Amendment] is not violated by general dissatisfaction or disagreements over strategy[.]"); *Stenson v. Lambert*, 504 F.3d 873, 886 (9th Cir. 2007) ("Stenson's disagreement with [defense counsel] is better characterized as one over trial strategy . . . . We can find no clearly established Supreme Court precedent holding that this kind of disagreement amounts to an actual conflict of interest.").

Abdul also fails to explain *how* he was adversely affected by this supposed conflict of interest. As we've noted, Abdul must show that—because of an "actual conflict"—defense counsel failed to pursue a "plausible alternative defense strategy or tactic" *and* "that the alternative strategy or tactic was reasonable under the facts." *Freund*, 165 F.3d at 860 (cleaned up). But, as we explained when we denied Ground Two, Abdul's strategy of forcing the State to trial before the lawyers could depose the victim's mother was *unreasonable* because (1) defense counsel didn't have a good-faith basis to demand a speedy trial, and (2) defense counsel wanted to depose the victim's mother as much (or more) as the State did. *See ante*, at 15–18. Since Abdul's proposed alternative strategy lacks "sufficient substance to be a viable alternative," he's failed to establish an adverse effect. *Freund*, 165 F.3d at 860; *see also Kleckley v. Florida*, 2022 WL 11607203, at *5 (S.D. Fla. Oct. 20, 2022) (Altman, J.) ("Kleckley cannot have been 'adversely affected' unless he can point to an 'alternative strategy' that would have been reasonable for counsel to pursue." (citing *Reynolds*, 253 F.3d at 1343)).

Because Abdul failed to show that counsel had an actual conflict (or that the supposed conflict adversely affected Abdul's defense), we **DENY** Ground Four.

### EVIDENTIARY HEARING

We won't hold an evidentiary hearing in this case. "[W]hen the state-court record 'precludes habeas relief' under the limitations of § 2254(d), a district court is 'not required to hold an evidentiary

hearing.'" *Cullen v. Pinholster*, 563 U.S. 170, 183 (2011) (quoting *Schriro v. Landrigan*, 550 U.S. 465, 474 (2007)). Based on what we've said—including and especially the presence of a robust state-postconviction record—we don't think we'd benefit from any further factual development.

## CERTIFICATE OF APPEALABILITY

A Certificate of Appealability ("COA") is appropriate only when the movant makes "a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2). To deserve a COA, therefore, the movant must show that "reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong." *Slack v. McDaniel*, 529 U.S. 473, 484 (2000). "Where a district court has disposed of claims . . . on procedural grounds, a COA will be granted only if the court concludes that 'jurists of reason' would find it debatable both 'whether the petition states a valid claim of the denial of a constitutional right' and 'whether the district court was correct in its procedural ruling.'" *Eagle v. Linahan*, 279 F.3d 926, 935 (11th Cir. 2001) (quoting *Franklin v. Hightower*, 215 F.3d 1196, 1199 (11th Cir. 2000)). Reasonable jurists wouldn't debate our assessment of Abdul's constitutional claims, so we'll **DENY** any request for a COA.

\*      \*      \*

Having carefully reviewed the record and the governing law, we hereby **ORDER AND ADJUDGE** that the Petition [ECF No. 1] is **DENIED**, that any demand for a COA is **DENIED**, that any request for an evidentiary hearing is **DENIED**, that all deadlines are **TERMINATED**, and that any pending motions are **DENIED** as moot. The Clerk shall **CLOSE** this case.

**DONE AND ORDERED** in the Southern District of Florida on June 13, 2024.

_____

**ROY K. ALTMAN**
**UNITED STATES DISTRICT JUDGE**

cc:    counsel of record
       Jabbaar Muhaahid Abdul, *pro se*